TYLER et al. v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1910.)

No. 1,789.

MASTER AND SERVANT (§ 287*)—ACTION FOR DEATH OF BRAKEMAN—QUESTIONS FOR JURY—INCOMPETENCY OF FELLOW SERVANT.

In an action against a railroad company to recover for the death of a brakeman, who was killed on the mountain division of defendant's road while helper engines were being taken into the train on which he was head brakeman to assist up a grade, there was evidence that his death was caused by the action of the engineer of the rear engine in moving the rear section of the train up against the forward section without receiving the signal required by the rules and at a speed of about eight miles an hour. There was also evidence that the operation of trains on such section of the road, and especially the breaking and making up of trains, required engineers who were not only competent and careful, but who understood that feature of the business, and that the most competent and careful men were usually assigned to the mountain service. It was also shown that the engineer in question had only been on the road as a train engineer for three months, and then not on the mountain division, and that previously, while acting as fireman and engineer of a switch engine, he had been once suspended and twice disciplined by defendant. Held, that such evidence was sufficient to entitle plaintiffs to go to the jury on the issue of defendant's negligence in employing an engineer who was not competent for the position to which he was assigned.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1051–1067; Dec. Dig. § 287.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action by Mabel Tyler and others against the Northern Pacific Railway Company. Judgment for defendant, and plaintiffs bring error. Reversed.

Govnor Teats, Hugo Metzler, and Leo Teats, for plaintiffs in error. George T. Reid and J. W. Quick, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the widow and minor children of Ira A. Tyler, deceased, for damages growing out of his death, which was caused as hereinafter indicated. Tyler was the head brakeman on a long freight train on the road of the defendant in error, coming west, between Easton and Lester, in the state of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Washington. When the train reached Easton, it became necessary to divide it and put on two more locomotives in order to move it over the mountain. Those additional engines are called "helpers." There was evidence given tending to show that rules and instructions for the making up and operation of trains, including the putting in of such helpers at Easton and at Lester, were posted by the company, and that the engineers of the locomotives are required to make up and operate the trains in accordance with such bulletins. H. S. Oliver was the locomotive engineer in charge of the train at the time of the accident by which Tyler lost his life. He testified, among other things, as follows:

"Ira Tyler was my brakeman in March, 1907. At that time I was in the employ of the Northern Pacific Railway Company as locomotive engineer, running a freight train from Ellensburg to Seattle, with Derringer as fireman, Hoskin as conductor, Tyler head brakeman, and Brown rear brakeman. Our train was made up at Ellensburg for Seattle, and when we get to Easton we get our water and supplies and mountain helper, to help the train over the mountain. Easton is east of the Cascade Tunnel, and is a helper station. A single train takes one helper, and other trains, like the one we were hauling that day, had two helpers. * * * When the freight train pulls in from Ellensburg, the road engine near is told how many cars they wish to leave behind the middle helper. He then takes water, the cut is made, and the front section of the train is moved ahead to clear the cut-off switch, leaving space clear for the middle helper to move in on the main track. The helper engines come out, the rear helper is run down the track to a switch at the rear of the caboose, cross over the main track on this switch, and up and behind the caboose, and couple on. The middle helper runs across on the cut-in switch onto the main line, and heads up into the hind end of the front section, and couples on. When he comes up here behind me and couples on, the brakeman couples the air into his engine. Then the engineer of the middle helper blows three blasts. That signals to me he is coupled on and wants to back up. Then I answer him with three whistles, and then he takes the train and backs down to wherever the head end of the cut is and couples onto that train. Then they cut the air into that engine, which goes through the remainder of the train. The air is tested, and when I get my orders for the road I whistle off by giving two whistles to get out of town, the middle helper answers with two whistles, the hind helper answers the middle helper with two whistles, which is the signal that he is ready to start. If he don't whistle, or the middle helper don't answer my call, I don't start. He may be underneath the engine somewhere. He whistles back on that purpose to protect himself. The middle helper must not move the front portion of the train without first giving the three blasts and receiving the answer; otherwise, it might catch the road engineer. I have nearly always got down and had some work to do. We climb the mountains, and are using heavy engines, and they need attention. When I whistle to back up, then I announce that I am in a position to back up. Under the rules the middle helper cannot move back without the whistles. He handles that part of the train in moving back to the rear section. * * * The work of cutting in helpers into a train and helping them over the mountains from Easton to Lester and back is called 'mountain work,' and an engineer wants to be a mountain man with some experience to run an engine over that grade. I had been running over that division from October before the accident, first as an extra man, but at the time of the accident had a regular engine. I did not know who was in charge of the rear helper at the time of the accident. I found out after the accident that it was Mr. Folmer. The middle engineer was Mr. Day."

The master mechanic testified, among other things, that under no circumstances should the engineer of the rear section move forward until the blasts of the whistles were given, and there was testimony tending to show that in the instance in question such blasts were not given, Folmer running his section up at the rate of about eight miles

an hour, striking the engine of the middle helper, and resulting in the death of the brakeman, Tyler. The ground relied upon by the plaintiffs for recovery was that Folmer was incompetent for the position to which he was assigned.

The testimony already quoted certainly tended to show that the proper operation of the section of road where this accident occurred required, not only careful and competent locomotive engineers, but, in the breaking and making up in transit of such freight trains as that in question, engineers who understood that feature of the business. One of the witnesses for the plaintiffs—a locomotive engineer, testified:

"I put in two years in the mountain service on this division, when the road was first built over the mountains. The difference in running the mountain service and on the level is that it requires more care. I mean that they generally have their competent men working on the mountain, and as a general thing, if they have got any one that is incapable, they don't generally put them on the mountain. It is considered what they call mountain service is harder, and they are supposed to be competent men. It requires greater care in going up and down the mountain, better judgment; must have special knowledge of the use of air, and so on."

There was testimony tending to show that Folmer was employed by the defendant in error as fireman for four years, after which he was given a switch engine in the company's yard at Tacoma for a period of six months, and then, for something less than three months immediately preceding the accident in question, was put on the road, but not on the mountainous portion of it. Testimony was also given on behalf of the plaintiffs tending to show that while Folmer was running the switch engine in the Tacoma yard he was disciplined by the defendant in error for running his engine into a car on the switch, and that prior to his becoming an engineer he was suspended for the period of 10 days for breaking a drawbar at Easton, and that while he was a fireman he had also to be disciplined; and there was also testimony tending to show that after the accident in question Folmer was taken by the defendant in error from the mountain division of its road and placed elsewhere.

These circumstances of the case, taken in connection with the testimony tending to show that Folmer started his engine with the rear section of the train before receiving notice by the blasts that everything was in readiness for him to start, and in connection with the speed at which he ran his engine in making up the train, entitled the plaintiffs, in our opinion, to the submission of the case to the jury. We therefore think the trial court was in error in taking the case from them.

Accordingly the judgment is reversed, and the cause remanded for a new trial.